THOMAS J. HENDRIX, ET AL. *v.* HARLAN MOORE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—363.]

**False Return on Execution.**
> Where an executon is issued and one of the sureties on the re-
> plevin bond pays a part and the other surety on such bond after the
> execution had been levied on his personal property, paid the bal-
> ance and takes an assignment of it to himself and a transcript to
> the circuit court and procures a return of the constable that the
> execution is unsatisfied except to the amount paid by the other
> surety, he can not in the circuit court levy on the estate of the other
> surety on said bond and by selling his real estate procure a title to it.

APPEAL FROM FLEMING CIRCUIT COURT.

November 15, 1884.

OPINION BY JUDGE HOLT:

The appellant, Isaac Terhune, had a life estate, and his son, Stephen Terhune, the remainder interest in some town lots. The appellee, Harlan Moore, held a small debt of about $26.00 upon said Stephen upon which James McAlexander recovered a judgment in a Justices' Court, it having been assigned to him.

The execution that issued was replevied with Isaac Terhune and said Moore as the sureties, and execution having issued upon the replevin bond, Isaac Terhune paid ten dollars upon it to the officer who had it, and the latter having levied it upon some personal property of Moore he paid the balance owing on it and having taken an assignment of it to himself it was, save as to said ten dollars, returned unsatisfied, and that no property could be found to satisfy it, although it had in fact been paid. The appellee Moore then filed the proper transcript in the Circuit Court Clerk's office and had the execution which issued thereon levied upon his co-surety, Isaac Terhune's life estate in said lots and on May 25, 1874, purchased it under the execution sale for $40.31, the annual rental value thereof being $50.00.

He however made no effort so far as the record shows to procure a sheriff's deed until April, 1878, or nearly four years after his purchase when one was made to him.

In the meantime and on April 16, 1877, Isaac Terhune, by a re-

corded deed conveyed his life estate in the lots to the appellant, Thomas J. Hendrix; and on October 19, 1877, the latter, as the owner of the life estate, and Stephen Terhune, the owner of the remainder interest, jointly sold and conveyed the lots to the appellee, Lewis Gully, reserving a lien for the unpaid purchase money.

On May 13, 1878, Moore sued Gully in ejectment for the lots, and obtained a judgment by default; and on August 1, 1878, a receipt transferred his interest in the property to his son-in-law, the appellee Robinson.

After the transfer however, and on October 8, 1878, Gully by a written lease which for some unperceived reason was taken by Moore in his name instead of Robinson attorned to Moore; and having failed to pay the balance of the purchase money, the appellants, Hendrix and Stephen Terhune, on July 15, 1879, brought this action to enforce their lien upon the lots, making Moore and Isaac Terhune defendants, as well as Gully.

The latter resisted payment upon the ground that his grantors did not at the date of his purchase have the perfect title to the land by reason of Moore having purchased the life estate of Isaac Terhune under execution; while the appellee Robinson by petition and answer made himself a defendant and asserted ownership as to the life estate. He also brought an action of some character against Gully, which was consolidated with this suit; but the papers are lost and hence are not a part of this record.

The court below adjudged the life estate to him, the question of lien upon the remainder interest being reserved by the judgment.

This brief statement of facts, and especially of the dates given above is necessary to the proper consideration of the rights of these parties.

The judgment in the suit brought by Moore against Gully can not affect the appellants, Hendrix and Stephen Terhune, as they were not parties to it.

When Moore transferred his purchase to Robinson on August 1, 1878, the appellee Gully was holding the property adversely to them under his purchase from Hendrix and Stephen Terhune; but aside from this, Robinson occupies no better position than Moore, because at the date of the transfer to him and when Moore obtained his Sheriff's deed in April, 1878, Hendrix and Stephen Terhune had the legal title to the property, the former then

claiming and holding the life estate of Isaac Terhune by a recorded conveyance, while the latter owned the remainder by descent from his mother; and hence the right of Moore to the life estate is the question to be considered.

His claim at the outset does not present itself favorably to a court of conscience because it is perfectly manifest that he was endeavoring to compel payment out of his co-surety, and by a sacrifice of his property, of the whole of the debt, when he was only liable for one-half of it and Moore himself for the other half.

Waiving the question of the effect of the false return of nulla bona upon Moore's execution, and to which he seems to have been a party if indeed he did not procure it, and the issual of an execution by virtue of it from the Circuit Court Clerk's office, we are of the opinion from all the testimony that before the Sheriff's deed was made to him the execution debt or the amount at which he had purchased the property had been paid to him; and if so he had no right to the deed, and Robinson stands in no better attitude for the reasons already given.

The testimony is not entirely satisfactory upon this point. The Terhunes have created a doubt as to it by their own pleadings, because Isaac Terhune claims that his son, Stephen Terhune, paid it, while the pleadings of the latter allege that his father did so. The testimony fails to show clearly whether the payments (save that of $10.00 to the officer by Isaac Terhune) were made before the execution sale or after; but all three of the appellants testify that upon one occasion the appellee Moore at his store house said that Stephen Terhune did not owe him anything, but that Isaac Terhune did, and that he would not release the lien on the property now in contest until it was paid. When this occurred he claimed to have a merchant's account against Isaac Terhune.

Moore in his testimony does not disprove this statement. He contents himself with simply saying that owing to his purchase of the land for the amount of the execution he likely did say that Stephen owed him nothing.

The latter says that he paid him in all $35.00 which was the full amount of the debt; that he paid at one time $20.00, at another time $10, and then a balance of $5.00; and he details the place and time of payment and even tells from whom he borrowed the money to make the $20.00 payment.

The copy of the credits on Moore's store account on Isaac Terhune shows the payment of $30.00 by "Steve," $20.00 at one time and $10.00 at another, and that they were made about the time of the execution sale. Moore admits that the $20.00 payment was made by Stephen, but says it was made for his father; while the latter testifies that if his son ever paid anything for him on the store account he did not know it, and the son testifies that he did not know his father owed Moore.

The reasonable conclusion from all the testimony is that the execution debt on Stephen Terhune, or the amount for which the life estate in the land was sold, was paid to the appellee Moore; and if he credited it upon his account on Isaac Terhune, it was without authority and because of the latter's insolvency.

Moore's claim having been paid and also the deed made to Hendrix by Isaac Terhune before the Sheriff's deed was made to Moore it results that Hendrix was the owner of Isaac Terhune's life estate at the time of the sale to Gully and that Robinson was not entitled to a judgment for it; and the same is therefore *reversed,* and cause remanded for further proceedings consistent with this opinion.

*B. D. Lacy, Reid & Stone, for appellants.*

*M. M. Teager, W. H. Cord, for appellees.*